Good morning, Your Honors. May it please the Court, my name is Ben Weisner on behalf of the plaintiffs' appellants in this case. I'm joined by co-counsel Stephen Watt, Anne Brick, Hope Metcalf, Amna Akbar, and Jameel Jaffer. And I would like to reserve five minutes for rebuttal today. Okay, could you just begin, for my benefit, in describing who you are representing and what the relief is that is sought in this case? Yes, we are representing the five plaintiffs in this case, Ahmed Aghiza, Mohamed Bashmila, Bisher Al-Raway, Binyam Mohamed, and Abu El-Kassim Bertel, and they are seeking compensation for their forced disappearance and torture, specifically against a corporation that they allege was complicitous in the United States actions. And what is the characteristic of your clients that they are all what? Our clients are foreign citizens who are invoking this court's jurisdiction under the Alien Tort Statute. And they were taken from where? They were seized in different parts of the world, in Pakistan, in Jordan, throughout the world. And their declarations lay out their stories in quite graphic detail. Your Honor, the central facts of this appeal, involving horrific allegations of forced disappearance, torture, and kidnapping, are known throughout the world, have been thoroughly investigated by foreign governments. The idea that the subject matter of this case is a state secret has always been a fiction. But this case arrives here today under unusual circumstances. The government's motion to dismiss this case is based entirely on two declarations submitted by CIA Director Michael Hayden, who will hold that job for a few more days. General Hayden's public declaration, the only one that I have seen, which reflects the policy of the previous administration, states that the CIA's detention and interrogation program is, quote, remains one of our most effective, and that's at ER 741. The declaration continues that confirming details of that program would, I'm quoting again, degrade the effectiveness of the United States' intelligence gathering activities by providing terrorists information about interrogation methods that would assist their interrogation resistance programs, and that's at 748. But on January 22nd of this year, the current President of the United States effectively ended that detention and interrogation program by executive order, and in that order called ensuring lawful interrogations. Well, couldn't it be possible that it would still be a state secret what was done in the past, even if we're no longer doing it? Judge Canovy, it might still be a secret, but whether it's a state secret is for this Court to determine, not just on whether the information is public, but on whether its confirmation would cause harm. And I would submit that the President's order effectively ending the program goes to the question of whether its confirmation in this proceeding could cause harm. The CIA director says it would degrade the effectiveness of a vital tool. If that tool isn't being used anymore, he's going to have to come up with another rationale for why this Court can't confirm. Well, one rationale, I might say that I feel quite free to ask questions and make hypotheticals and everything else, because we have not yet examined, as we will, the matter that's to be examined in camera. I apologize. I did not make that clear at the outset, and I should have. No member of this panel has reviewed the classified material. So you're in the same boat that I am? We are. Okay. So we're on the same level you are, but I'm, for instance, one question I would have is perhaps the government's view is that revealing what we did, even though the program, that exact program is going to happen again, affects our relations with other intelligence services in such a way that will harm us in the future. Maybe not in this exact program, but in hundreds of other things that we have cooking. Well, I'd like to respond to that specific argument. It is one of the rationales that General Hayden advances for why this program, the very subject matter of this program, is a state secret. And one of them is, just as you said, Judge Canby, that we have these relationships with foreign governments that rely on confidentiality, and if we're the intelligence sharing in the future. It's very hard to square that with what's going on in this case. For one thing, with respect to many of these plaintiffs, those foreign governments have been very open about their role in these detention interrogations, and even open about the United States' role. For example, in the case of Ahmed Aghiza, one of the plaintiffs in this case who's now in a prison in Egypt, the Swedish government, which cooperated with the United States in his transfer to Egypt, has acknowledged that it made an error in $450,000 in damages for its secondary role in that rendition. And so the idea that somehow this Court confirming what the entire world already knows in that regard will harm our relationship with Sweden is very hard to square with the facts. And I could go through the plaintiffs with Binyam Mohamed, with Bishr al-Rawi. There are proceedings going on in the United Kingdom where the roles of those governments are being publicly aired. And so in the abstract, I understand the argument. But this Court's job is to determine in this case how confirmation of what really is known to the world can plausibly, can reasonably cause harm to national security. I'd also like to say ---- I take it it's your client's position that State Secret doesn't — does not blanket the whole proceeding, and that the way this case should proceed is to go back to district court, and you will put on your proof. And if items come up as part of that proof that are classified information, the district judge can make appropriate determinations at that time. Do I have that roughly? Yeah. Let me put it another way. If you remand this case to the district court, the government's secrecy interests will be amply protected by item-by-item determination of the State Secret's privilege. If you affirm the dismissal of this case, plaintiffs will forever be shut out of their day in court. Well, but I'm looking at Totten, the Totten case, which goes back to 1875, and it's dealing with secrets of the Civil War, which was over by that time. And what the Supreme Court said there was, as a general principle, public policy forbids the maintenance of any suit in a court of justice, the trial of which would inevitably lead to the disclosure of matters which the law itself regards as confidential, which it will not allow the confidence to be violated. So it says, the maintenance of any suit. So doesn't that really preclude this kind of sifting, discovery-type determination of privilege analogy that you're making? No, I don't think so, Your Honor. I think Totten describes a particular subset of cases that are not justiciable because of the nature of the case, without regard to whatever harm might be caused by their litigation. This Court was reversed unanimously by the United States Supreme Court when it held that Totten and the State Secret's privilege had merged. But if you were to hold in this case that the Totten bar precluded us from proceeding beyond the pleading stage, it would be the first Federal court decision to hold that a plaintiff who's not in privity with the government in any kind of contract is barred by the Totten case. It would be the very first time that that's done. Now, the same interests, the interests in avoiding harm to the nation through revelation of secrets are amply protected by the State Secret's privilege. So by holding that Totten does not apply here, simply because of the nature of the relationships at issue, this Court is not exposing the government to any harm. The State Secret's privilege is the proper means for evaluating the government's secrecy interests in this case. So your position, I take it, is that you can prove every element of your complaint without reference to any classified information? Yes. And certainly at this stage, it's possible that that will be easier with some of our five plaintiffs than it will be with others. But it's very difficult to start at the very beginning of a litigation and to look with clairvoyance at what every theory of the plaintiffs will assert and every possible defense that the defendants might assert and say at the outset, this case can't be litigated. That kind of determination is best made on the battlefield of discovery, after we've had a chance to develop our claims and after they've had a chance, if necessary, to assert the State Secret's privilege to prevent us from introducing them. Okay. The following question is not a discovery question to find out what's in your proof file. But just as an example, your second claim says that Jesperson conspired with agents of the United States in plaintiff's torture. How are you going to prove that? Well, that is one theory that we don't have to prove in order to hold them liable. For example, we to hold them liable. That's not what I asked you. Yes. How do you plan on proving that? It's in your complaint, isn't it? Yes. Our answer to that, Judge Hawkins, is that Jesperson's cooperation with the United States in this program not only is not a State Secret, it's not a secret. The Council of Europe, which represents 47 member states in Europe, has published a report on their audition program which details that Jesperson was the CIA's flight services provider. That is a public document. We have invoices, flight records, telexes from criminal prosecutions that have Jesperson's name on them. Is the heart of your case what happened in an airplane? No. The heart of our case is not what happened in an airplane. Well, then that's where I get... Because I thought that the heart of your claim was what happened to them once they had been taken. Yes. And the question that we would answer in the course of discovery and at trial and that they would have an opportunity to defend against is, given what they knew about the nature of the CIA's program, was it reasonably foreseeable? Did they know or should they have known what was likely to happen to our plaintiffs when they assisted the CIA in transporting them to countries that are notorious for their torture and that the State Department lists every year as serial torturers? But how do you prove what they knew about the program without reference to classified information? Well, for one thing, we already have a sworn declaration from a former employee that may reflect an admission because it quotes a very senior official in the company saying, we knew these were torture flights and we openly discussed it. Now, if it's the case that they were discussing it within the company, what they were doing and didn't treat it as a secret, it may well be that we're permitted over the course of discovery to ask them what their level of knowledge was. But, Judge Hawkins, if I could just complete that, I don't think that we need direct evidence in order to present our prima facie case or even to get to trial. We may be able to present our case with circumstantial evidence. Any reasonable person would have known, given the following set of facts, that this was what was going to happen to people who were chained to the floors of planes and flown to these countries by the CIA at this time. Well, what I was going to ask you and will ask you now is your response deals with or there may be ways of proving it, but if we're here under Reynolds and not Totten-Tennant, which I take it is your position. It is. Doesn't Reynolds extend to a defense? Yes. How can Reynolds – let me finish. How can Jesperson defend against the allegation that they conspired with agents of the United States in plaintiff's torture without reference to something that assuredly must be classified? Well, that is assuming that they have a valid defense. And remember, this Court has said it's not just any defense, but a valid defense, a meritorious defense. And so we can play the game at this stage of the litigation of trying to imagine defenses that they might assert and try to figure out from where we sit whether they would or would not raise state secrets claims. But the proper way to do that is during discovery. It may be that they don't have a valid defense to that claim, and it may be that they do. And if they do have a valid defense to that claim, and I would say we have many other claims and many other theories of liability, that can be asserted at the discovery stage. And we might not be able to get to trial on that particular theory that you stated. But, again, as — Your position, just so I've got it tightly focused, is that we're really here on a very narrow question, whether this is – the whole proceeding is covered by a blanket of State secret privilege, or whether this ought to go back to district court in the ordinary course of events with you discovering and putting on your proof and — and individual determinations made about specific items of proof or defense. Do I have that about right? No, you have it exactly right. And if you are looking for the easiest rule to apply, I would suggest that you should choose theirs. And their rule is that when the CIA director states that a program is clandestine – and it doesn't matter what other government officials have said publicly about that program, including that same CIA director – if he makes that determination, then anything related to that program, to anyone who might have assisted the CIA, is categorically off limits to judicial review. And their theory would not be different if we were talking about not torture and kidnapping, but extrajudicial murder. Their theory would not be different if we were talking about not foreign citizens, but U.S. citizens. Their claim is, if the CIA director says this is a clandestine intelligence operation, the doors to the courtroom shut. That's it. That's the end. That's a very easy rule. We say that you have to look carefully. Now, this is the pleading stage. We didn't want to give you a thousand pages of documents, but we didn't have a choice, because they were telling us that everything related to this program is a state secret and litigation of these claims is categorically off limits. We had to demonstrate to this Court that, in fact, what they are really saying is that the only place in the world where these claims can be discussed safely is in this courtroom. It doesn't matter that 15 foreign governments are conducting civil and criminal investigations of these same claims. It doesn't matter to the Council of Europe that the European Parliament have thoroughly vetted these. It doesn't matter that the government of Sweden has paid damages to one of our plaintiffs in these cases. Their simple assertion that the subject matter of this is a state secret is enough to cut off all judicial inquiry. And, yes, our position is that, very likely, the CIA director has identified classified facts in the declaration that he gave you and that you'll read later. But that's not the question. The question is whether the CIA director can say at the pleading stage that those facts are going to be necessary and relevant to our prima facie case. Now, the CIA director is not a federal judge. It's not his job to determine what facts will be relevant at trial. It's very dangerous when the CIA director takes that authority onto himself. He might end up with tapes destroyed that could be relevant to an investigation. It's for this Court to make that decision. I'm looking now at Reynolds. And Reynolds says that the Court has to be satisfied that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of  And when this is the case, the Court should not jeopardize its security. Right. And Reynolds also says that the judiciary cannot abdicate its role as the arbiter of what evidence is relevant and necessary. Well, yes, that's true. But we can look at the nature of the claim, can we? Yes. Absolutely. And the conduct that is complained of. Yes. Yes, you must, in fact, look at that. And you must determine whether the CIA director's declaration unequivocally makes clear that each of the five plaintiffs in this case, not one, each of the five plaintiffs in this case cannot make out a prima facie case without reference to privileged and classified information. That's a very difficult burden on the Court at the pleading stage of a lawsuit unless the Court thinks that the very subject matter of the lawsuit is a state secret. Right. Al-Haramayn is not the case here. Because Al-Haramayn makes clear that when the government has publicly described a program, when it's publicly defended it, described some of its parameters, said that it's illegal, told us who it targets, it can't then turn around when it's sued and say that the very subject matter of this case is a state secret. It can still protect its secrecy interests during discovery, but it can't declare the case non-justiciable when it is engaged in a rigorous public defense of the program and even told us key details about what the program is. Does he want to reserve? Did you want to reserve some time? Yeah, I'd like to reserve. Okay. You've got about two minutes left. Okay. Great. May it please the Court. I'm Douglas Letter from the United States Department of Justice, which has intervened in this case to urge affirmance. With me today is Mr. Michael Abbate, who also from the Justice Department, who handled the case in district court, and Mr. Dan Collins, who represents Jeppesen. Mr. Collins has agreed that I will be presenting the argument here, affirming or urging affirmance. When was the district court decision? About a year ago, February. Is there any material that has happened in terms of historical stage that has any bearing here? No, Your Honor. No. The change of administration has no bearing? No, Your Honor. The government's position is the same? Exactly, Your Honor. The position that I'm advocating here remains the position of the director of the CIA. He stands behind his declaration. The positions that I'm arguing have been thoroughly vetted within the appropriate officials within the new administration, and these are the authorized positions. So you represent that you are conveying the views of the present Justice Department? Exactly, Your Honor. Absolutely. Absolutely. Your Honors, the — and first of all, as you have indicated, you have not looked at the classified material. We are available when you do so. If the Court wishes to have any oral argument under appropriate security arrangements, we will make ourselves available to the Court. It's interesting you call it an argument. Yes, Your Honor. It would be kind of one-sided. Yes, exactly, Your Honor. And this is something that has been used. I've participated in several such arguments. We might have some inquiry. Exactly. We'd certainly let you know, I suppose, if we did. That's right, Your Honor. As I say, I've had several instances where the courtroom is cleared and the judges, in order to carry out your independent Article III function, have questions. It's not surprising at all. And as I say, we've done this on various occasions. As Your Honors can see, there is almost no difference, if any difference at all, on the legal positions that Mr. Weisner has argued and the government's position. We also agree that this Court should look at the material, as Judge Ware did, and satisfy yourselves applying, as this Court has said, the utmost deference to the executive branch, satisfying yourselves that the State Seeker's privilege has been And so there really is no difference. I'm not sure whether Mr. Weisner was arguing that there was any legal error here. I don't believe so, nor could he, because not just this Court, but in many of its sister circuits have made clear that the – it is appropriate to dismiss cases at the outset if the litigation would threaten the – Well, for just a prima facie case, suppose somebody says, well, I just want to prove that I was kidnapped in Sweden and stuck on a Jepson plane and flown somewhere against my will, and just that much, which entitles me to some damages because they shouldn't have done it, because it was obvious when they were doing it that I was being spirited onto that airplane. Right. And now Sweden apparently acknowledges that. Then why can't – and why can't that case go forward and then let the trial judge decide where it stops? Your Honor, I have a batch of responses to that, all of which are fully supported in both the record and the case law. One is, as was pointed out earlier in your questioning, remember, it's not just can the plaintiff present a prima facie case, it's – and can the – is the defendant handicapped in making a defense, and does this – will this force disclosure of State secrets get into subject matter that cannot be litigated? Why should we do that here? For several reasons. First, as one of Your Honor's questions was about how would the plaintiffs here move forward with the litigation, because remember, this litigation is based heavily on their assertion there is a relationship between Jepson and the United States government in clandestine foreign intelligence activities. I take it they recognize that if it goes back for individualized determination, if I can use that shorthand, that it could well be that the district judges said, okay, the Ninth Circuit sent us back to what I'm supposed to do this individual. I've now looked at it, and I don't think Jesperson can defend this case without reference to confidential classified information dismissed. I mean, they – that's a reality, isn't it? Of course that's a reality. The – and again, several – But you want us to do that here? Oh, there's absolutely no need. Judge Wehr has – and, no, what we'd like you to do is, as Judge Wehr has looked at it, we'd like you to read our classified brief and look at the CIA director's declaration, as you properly will do, and you will see that this case – as Judge Wehr determined, this case cannot be litigated. That's absolutely clear. I can understand exactly why Mr. Weiser is making the arguments here today, but I think you will see precisely why Judge Wehr was correct. This case cannot be litigated. But again – But do you – do you really have to – what Judge Wehr said, I'm looking at his order, is, in sum, at the core of plaintiff's case against defendants are allegations of covert U.S. military or CIA operations in foreign countries against foreign nationals, clearly a subject matter which is a state secret. So the district court wasn't saying that this is a defense. It was saying that this is the core of what they're trying to plead. Right. And – and Judge Wehr is exactly right about that. As I was starting to say a moment ago, remember that they assert that Jefferson was complicit and worked with the United States government in a clandestine foreign intelligence operation. That – that is their claim. That's their – that's sort of their second claim. I – I think that's – I mean, as I understand it, their first claim is, look, I got kidnapped, taken somewhere, and tortured, and these guys flew me there. Right. So as I say, they – I don't think I'm disagreeing with Your Honor. Obviously, Jefferson has to be part of their claim. Otherwise, they've got the wrong defendant. So they have to prove that Jefferson worked with the United States government in a foreign clandestine intelligence operation. The problem right away is that the – the CIA director has said we will neither confirm nor deny that there is any relationship between the United States and Jefferson, and litigation over that assertion gets immediately into a state secret. And once again, all you need to do is read our classified brief, and you'll see exactly why that is laid out there, and therefore, why this case – the very subject matter, which is their allegation that Jefferson is complicit in a foreign intelligence – clandestine foreign intelligence operation. That's the subject matter, and that cannot be litigated. That can't work. I'm sorry. Let's assume that we're here under Reynolds and not Totten-Tinnit, just for the purpose of my question. Yes, Your Honor. Does Reynolds apply to facts or evidence? Reynolds applies to – to evidence. What the State Secrets Privilege does is it says – So it – Reynolds does not apply to facts. I may be missing the distinction Your Honor is drawing. I'm just asking a question. Does Reynolds apply to facts? Yes, Your Honor. Facts – facts-slash-evidence. That's why, as I say, I'm sorry if I'm missing the – I'm not talking about how you prove something, but the fact that something happened. Does Reynolds apply to that fact? Yes. If the fact is classified, then – then, yes, it would. I – I'm sorry. I'm – I'm still missing – So anything the executive branch of government says that fact is classified means that it can never be examined. Is that correct? It can't be examined in court. Yes, that – that's obviously correct, Your Honor. That's exactly what all the State Secrets cases say, Your Honor. That's – that's absolutely clear. If I understand – if nobody gets to my question, but go ahead. No, I'm sorry. Answer his. I'm sorry. If you're finished. Otherwise, continue. I think we're on the same line of inquiry.  All I was going to say, Your Honor, is if the – what Reynolds does – what State Secrets privilege does is it removes material from a case. It's absolute. It means that when the government asserts a State Secrets privilege, we have to convince you that it has appropriately been asserted. If it has appropriately been asserted, that evidence, facts – I'm – again, I'm sorry if I wasn't understanding the distinction between those two. To me, those mean the same thing, that evidence or facts are removed from the case. That – there's no doubt about that. So then the next question is, can the litigation go forward? There are many cases where the United States comes in, asserts a State Secrets privilege, and yet the litigation can move forward without that – that evidence or those facts. Well, you say that you can't be in a position of affirming or denying Jepsen's involvement, but you intervene. I mean, you could have sat somewhere and never offered anything and waited. If you were subpoenaed, you could have asserted a State Secret. But if – you wouldn't have had to admit or deny anything. The – as you can see from the – our briefs, our position is in part that there is a problem of U.S. government acknowledgment of things. So even if there are – You wouldn't have to acknowledge it. Even if the judiciary, the judicial branch, makes a formal decision and issues a formal opinion that something is true, as we have pointed out, that in and of itself causes problems and – in appropriate circumstances. And that is in part why certain things cannot be litigated. So you could – you can – it gets a little bit like the old Official Secrets Act jurisprudence in England, that you can say something is secret even when a newspaper reporter has it. Is that right? And – and nobody can litigate to publish if somebody goes in and smashes his press because that – somebody might have to say, oh, gee, he had this information, and that's what happened. I don't believe so, Your Honor. If we smash the press, it's hard for me to see from the hypothetical. Well, because they were about to publish the Pentagon Papers or something. I – and – and again, Your Honor, nothing I'm saying is in any way new, radical, different. This is exactly how the privilege operates. See, what I guess I'm getting at is I can understand the government saying, we've got some secrets, and you, the court, can't pry them out of us. And this kind of relates to what Judge Hawkins is getting at. But if somebody else has it, and they're litigating over it, so what? I mean, a court can say, well, on the evidence before us, this fact exists, and therefore a judgment will be issued. And the government can say we – can continue to say we neither admit nor deny this. Right. And let me give you an example, Your Honor, of exactly why that's a problem. And what you've just raised is the classic state secrets case in another context. One context is somebody sues the United States. Classic situation, let's say two private parties, a breach of contract action. One sues the other. And the – the defendant says, I breached your contract. I did it because the – you know, pick a part of the intelligence community. The CIA told me to breach that contract. You could say, well, the U.S. government could just stay out of that case. We could do nothing. But that's not what the state secrets privilege has – as it's been applied. We can say – we can come in and, again, remember, we have to make our case to the independent Article III judiciary, and we say, here is why it would be a problem for this claim between two private parties to be litigated in court and for the court to issue a decision about that. And as I say, that is a classic case, Judge Canby. We – we litigate those, and they are routine. That evidence is routinely taken out of the case. And in some instances, the case is dismissed. Kagan. So what is the prototypical case that you want us to look at for that? Because this is – you're really like the unindicted co-conspirator in a sense here. So what is the prototypical case where the government comes in and says, you can't look at that evidence, but you can do everything else? Well, Reynolds itself, the – the United States did not seek dismissal of the Reynolds case. So as I say – and remember, Reynolds is a case by the – the families of the deceased service members against private parties. It was not against the United States. So that's a perfect example. The – I think the most prototypical case – example of this very case is El-Masri. The Fourth Circuit dismissed a case virtually identical to this one. It seems to me that El-Masri did the same thing that you're doing in your argument, which is conflating evidence with facts. And you may have a better argument in your arsenal there, but so far you haven't convinced me, A, that there's not – not a distinct difference, and that, B, that Reynolds does not apply to facts. Let me give you an example. Suppose they have an affidavit or a witness prepared to come forward and say exactly what extraordinary methods of interrogation were applied to one of these plaintiffs. The individual says, I was there in that Egyptian prison, and I put the electrodes on, and I did this, and I did that. That's evidence. That's not classified. But the director of CIA says the fact that this even happened is classified. How do we resolve that? There is a difference, isn't there? Your Honor, I'm not – I'm not – I'm sorry. I'm not trying to quibble you. I'm just – I'm having trouble understanding. No. That is exactly the State Seeker's privilege. If somebody says – let's say you have a former CIA employee, and he says, I want to go to court, and I want to testify, or I want to write an article, or I want to go on TV. I want to disclose things. And so it could – if what Your Honor is saying is in court, the facts become evidence, that's exactly the State Seeker's privilege. That's exactly how it's been applied in any number of cases over the years. If, instead, what you're talking about is can the person write a book, the answer is, no, we have case law on that as well. If somebody wants to disclose classified information … by the present administration that when the CIA director says a fact is subject to State privilege, there's no way that can be proven independent of whatever evidence there might be. It – it cannot be litigated. That – that's exactly – again, Your Honor, I'm sorry. I'm … I guess it could be litigated in some other country. … State Seeker's privilege, Your Honor. This is precisely what it is, and it's been applied in various cases. Well, I'm still having trouble because I thought Reynolds was a suit against the United States. No, Your – no, I thought Reynolds was against the – the airplane company. The widows of three deceased civilian observers consolidated suits against the United States. Okay. I'm sorry, Your Honor. I thought that it was against – I'm – I'm wrong, then. I thought it was against the – that they couldn't sue the United States because of the – there would have been sovereign immunity. But I thought they were suing the – the manufacturer. But I apologize if I'm mistaken on that. The … Well, that's why I'm wondering whether we have a suit where at least the nominal defendant is – is a – is a third party. I believe Farnsworth Cannon is another case involving suits against private – private companies. We litigated a Doe case recently in the – in the Second Circuit. It's not a Supreme Court case. The Supreme Court decisions on State Secrets, there's Weinberger v. Catholic Action, so that involves the United States. Tenet and – and Totten are both suits involving the United States. So the Supreme Court decisions are involving the United States. The various circuit decisions, as I say, they – they – they're all over the place, and – and many of them involve litigation involving two private parties. I repeat, we had a case recently in the Second Circuit, a Doe case, where it was one private party suing another private party, and they were asserting relations – relationships with the United States government as part of foreign intelligence. And – and the United States came in and asserted the State Secrets privilege and said these issues cannot be litigated. And as I say, that – that is the – the classic, you know, State Secrets privilege type of case. Do you think that Weinberger – I was one of the panelists that got burned in the Weinberger case. I'm sorry, Your Honor. Do you think that that is – that was a case where the government wouldn't tell us whether they were going to put nuclear weapons underneath the runway at the Hawaii airport? Right. And we said, well, just pretend that you're putting them in and do an environmental impact statement, and the Supreme Court said no. That's right. And what the – as you know, the Supreme Court there relied on Totten. I believe it was the very quote that you read. Uh-huh. That was specifically – and that is very much – that was reaffirmed, and the – the Supreme Court in Tenet quoted that same language. And so that is exactly the Supreme Court's view. Your Honor, Judge Hawkins, if I can just try one more time, because I'm very – I think this is obviously an extremely important point. Remember that the State Seeker's privilege is an evidentiary privilege. It is only for litigation. Just like the attorney-client privilege. That is exactly right, Your Honor. You're – you're right. And didn't the Supreme Court tell us enough, John, exactly what I've been trying to get through with my questions, and that is that the privilege applies to evidence, not to facts. And again, if I'm understanding you correctly, it applies in litigation. The plaintiffs here have brought a lawsuit. They're not trying to write a book. They brought a lawsuit. And the question is, can certain evidence be used in court? And the answer is, if it's covered by this – the valid assertion of State Seeker's privilege, then no. It's excluded from the litigation. And so, again, if instead they're saying, we want to give speeches, write articles, obviously the State Seeker's privilege has nothing to do with that, because it is a constitutionally based litigation privilege. So that means it's excluded from evidence even if you don't have it. In other words, they can't introduce evidence through a witness from Sweden or something that somebody was kidnapped. That's exactly right, Your Honor. If, again, if it's validly covered by the privilege. Now, for example, in the Al-Haramain case, the plaintiffs there, very similar to the plaintiffs here, said, we know, we know through various means about the terrorist surveillance program. We're not demanding at this point the information from the government. We have our own information. We have our own expert. We have a witness who was on the inside. So we know the court – this court held, nevertheless, that the case had to be dismissed because in order for them to attempt to – to demonstrate their standing would immediately run into State Seeker's privilege. And so the fact that they had plaintiffs, their plaintiffs said, we have experts, we have our own evidence, and we have evidence from the, you know, disclosed by the government, this court said the case had to be dismissed. So, again, this – what I'm arguing for here – Were you involved in Al-Haramain? Yes, Your Honor. Yes, I was one of the – Well, I was on the panel. Yes, you were. And you had access to the confidential information, correct? Yes. And so did I. Yes. And you know why it went back. So do I. Yes. And it's exactly the same here. Once you see the government's brief and you see the classified declaration, I suggest, Your Honor, that this will be exactly like El-Masri and exactly like Al-Haramain. You will understand precisely, as Judge Wehr did, why the case cannot be litigated. And Mr. Weissner said you have to look carefully. We agree completely. The judiciary can't advocate. We agree completely. There is absolutely no – we're not saying – and the State Seeker's privilege has been very misunderstood in the press. There seems to be this notion that all that happens is – and Judge Hawkins, as you well know because of that case, that all that happens is the government comes in and says State Seeker's end of case. It is not that way at all. We have come in here with a very detailed and lengthy declaration that explains, again, to the independent Article III judiciary exactly what our position is and why. So that this is not – I know we have the doctrine and the Supreme Court has ruled on it, but all of these things could have been going on, well, to pick a state at random in Missouri. And it would still all be a secret. Nobody could sue over it. And nobody could do anything with it. It would just all be a big black hole. And somebody would get up and say, this is a state secret, and maybe awful things are going on. But the plaintiffs and the judiciary and the Constitution and everything else have to step aside. Absolutely not, Your Honor, because remember, as with many things, even though there is – there may not be appropriate litigation, we have ample other means. We have congressional oversight. We have very significant congressional oversight. We have inspector general investigations and reports. So that – and we have, then, foreign relations. So a case that involves foreign governments, there can be statements, et cetera, by the foreign governments. So just because something is not litigated, as you know, there – there is a whole doctrine of political question. That doesn't mean that something is – is always secret or hidden. We have other means that are appropriate for taking care of it. And if I may, just one other point. The – the question was raised about – to Mr. Weisner about, well, shouldn't we go back and we can do this maybe step-by-step, you know, piece-by-piece. That exact approach has been rejected because, as the four – the words of the Fourth Circuit in the Sterling case, we can't – the judges shouldn't play with fire with this type of national security situation. The – the Fourth Circuit, I believe that … Nor should the government in asserting this privilege. Absolutely, I agree completely, Your Honor. As you know, this privilege can only be asserted by the head of a department. It can only be asserted when high-level people of the Justice Department approve it, and it can only be successful if the independent Article III judiciary actually examines the – the assertion of the privilege and itself says, yes, it has been appropriately asserted here. So I agree completely with what you've said, Judge Hawkins. This is not something that – that is – either is or should be done in any way other than with the most seriousness. But again, the Court – this Court's sister circuits and – and this Court itself have made clear you don't play with fire. You don't say, well, let's see, let's maybe push this a little further. That's precisely what is – is not permitted. And, in fact, that – in Al-Haramain, that's exactly the – this Court criticized the district judge's approach for saying, well, let – let's – let me try to do this step-by-step, and this Court indicated that that is not appropriate. Thank you very much, Your Honor. I just want to respond to a few points that Mr. Leder made. He spent 20 – We'll give you a little extra time. Thank you. He spent 20 minutes trying to persuade you that this is a typical state secrets case. There is nothing typical about this case. It's not typical for the government to assert an evidentiary privilege before any evidentiary disputes have arisen. It's rare and extreme for the government to try to block litigation at the outset rather than on the battlefield of discovery where it's played out in the vast majority of state secrets cases. There's also nothing typical about the allegations in this case because the government's theory amounts to saying that even if the government engaged in kidnapping and torture, by virtue of the director's declaration, that can be taken off limits to any judicial scrutiny and accountability. I want to address the question of how the defendants might defend and whether it's even possible to speculate about that at this stage. I think it's quite difficult, and we tried to do it in my opening argument. But by trying to apply that part of the doctrine at the pleading stage, we have to imagine what those defenses might be, even if they are just hypothetical, as the Fourth Circuit said in El-Masri, and then decide based on the director's declaration whether they would actually be prevented from doing that. But as the D.C. Circuit said in Inree's sealed case, a recent case, if you apply the doctrine that way, virtually any time the government invokes the state secrets privilege, a case will have to be dismissed because there will always be a hypothetical defense that you can imagine that would implicate state secrets. And that's why that doctrine is better applied during the course of discovery as the parties' theories develop. But their argument is that Judge Wehr did that. I don't know what Judge Wehr did. What's your response? I don't know what Judge Wehr saw. He certainly didn't say that's what he did from his opinion. It's unclear from his opinion. His opinion says that the very subject matter of the case is a state secret. His opinion says that he lacks subject matter jurisdiction, which is not something that you find in any of the cases. So I don't know how to read Judge Wehr's opinion. He also refers in his first sentence to a so-called rendition program, even though the government has very openly acknowledged that there is an actual, not just a so-called rendition program. My understanding of Mr. Leder's argument, Judge Hawkins, is that our client's declarations, which are lengthy and which are in the excerpts of record, are state secrets, that their own accounts of what happened to them in these various prisons, of being transported, of being told by American interrogators, I have to get this instruction from Washington, you'll be released when Washington says this or that, those are state secrets, what our clients are saying themselves. Now that is Alice in Wonderland, as one of you said in the Al Haram decision, and a very odd thing, and not at all the same situation as a former CIA employee who wants to write a book, who is under a contractual obligation not to do that. He's made an agreement when he joins the CIA that he's going to protect that information and not profit from it, or even testify against the CIA. Our clients did not make an agreement to be abducted, chained to the floor of planes, dressed in diapers, and flown to foreign prisons where they were held without access to counsel, a very different situation, and I think that you were making a critical distinction there. With respect to Al Haramain, the two of you know things about it that I will never know, but I do know this from the opinions, that in Al Haramain, the plaintiffs conceded at oral argument that they lacked standing without a document. The privilege was applied to a document. This is what we're asking. That usually doesn't happen at the pleading stage. We want them to assert it over something specific, not over something vast. Without that document, they couldn't assert standing. Our clients don't need any document to tell them what they know and what they've told you, and that's what happened to them. We're also told that other branches are supposed to provide oversight. Well, when the former Secretary of State was in Europe and was being criticized about their rendition program, she said, when and if there are mistakes that need to be addressed, we'll deal with those in our own courts if necessary. That's at 261 of the excerpts of record. So when the political branches are asked about it, they refer it to the courts. When we bring it to the courts, we're sent back to the political branches, and this is how impunity is established by a government. I just want to close by saying that the executive branch officials who made the decisions that resulted in the disappearance and torture of the plaintiffs in this case have defended those actions, not only as necessary to national security, but as legal, but in our system, that question is for the courts and not for the director of the CIA to decide. If General Hayden has his way, no court will ever decide that question. The CIA will have the first, the last, and the only word on the legality of its own actions here. The government is essentially saying this court has no role beyond reading the declaration. The entire world can discuss this case. Newspapers can write about it. Foreign governments can investigate it, can pay damages, but this court can't. The notion that you have to close your eyes and ears to what everyone in the world is talking about and knows is absurd. Just last week, the British High Court was confronted by the same United States secrecy demands involving the same allegations of torture in the case of Binyam Mohamed, one of our plaintiffs. The court reviewed the disputed evidence that the United States did not want released and was bewildered by the US claim that its release would jeopardize national security, and here's what it said. The suppression of reports of wrongdoing by officials and circumstances which cannot in any way affect national security would be inimical to the rule of law and the proper functioning of a democracy. Championing the rule of law, not suppressing it, is the cornerstone of a democracy. We ask this court to affirm that principle and to allow this case to go forward. Thank you. Thank you, counsel. The case just argued is submitted for decision. The court appreciates the quality of argument presented by both sides. That concludes this court's calendar for this morning, and the court stands adjourned.
judges: Schroeder, Canby, Hawkins